815 A.2d 489 (2003)
357 N.J. Super. 339
Betzaida GONZALES, Co-Administrator and Administrator Ad Prosequendum of the Estate of Gustavo Rodriguez and as Guardian Ad Litem for the Minor Child Cesar Rodriguez; Ramona Checo, Co-Administrator and Administrator Ad Prosequendum of the Estate of Gustavo Rodriguez and as Guardian Ad Litem for the Minor Children, Jeilyn Rodriguez and Roselin Rodriguez; and Julio Jacques, Plaintiffs-Appellants,
v.
The CITY OF CAMDEN; Herbert Leary, Individually, and/or as Agent, Servant and/or Employee of the City of Camden; Mike Torres, Individually, and/or as Agent, Servant and/or Employee of the City of Camden; Martin Jones, Individually, and/or as Agent, Servant and/or Employee of the City of Camden; Doris Arch, Individually, and/or as Agent, Servant and/or Employee of the City of Camden; Luz Torres, Individually, and/or as Agent, Servant and/or Employee of the City of Camden; and Jose Delgado, Individually, and/or as Agent, Servant and/or Employee of the City of Camden, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued November 13, 2002.
Decided February 6, 2003.
*490 Mark S. D'Amore, Marlton, argued the cause for appellants (John Calzaretto, attorney; Mr. D'Amore, on the brief).
*491 Marc A. Riondino, Assistant City Attorney, argued the cause for respondents (Dennis G. Kille, City Attorney, attorney; Jonathan E. Diego, Assistant City Attorney, on the brief).
Before Judges SKILLMAN, LEFELT and WINKELSTEIN.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
In this appeal, we consider the "statecreated danger" doctrine, recognized by a majority of the federal circuit courts of appeal, under which state and local officials who create a danger of harm by private actors that otherwise would not have existed may be held liable for a violation of the substantive due process rights of the injured party. Although the Supreme Court of the United States has not yet determined whether this is a viable cause of action, we accept the doctrine as formulated by the Third Circuit Court of Appeals. However, we conclude that plaintiffs' claim, which rests upon local officials' insistence upon inspecting a store in a high-crime neighborhood after its normal closing hour and refusing to accompany the owner and his employees to their car after the inspection, following which the owner and an employee were shot, does not provide a basis for imposition of liability under the state-created danger doctrine.
Gustavo Rodriguez owned a grocery store in a high-crime area in the City of Camden. Rodriguez's brothers, Julio and Ricardo Jacques, worked in the store. The three men would usually open for business around 7:00 a.m. and close between 9:00 and 9:30 p.m.
Around 9:30 p.m. on March 13, 1998, while the brothers were in the process of closing, a group of six to eight officials of the City of Camden arrived at the store. These officials, who apparently included representatives of the licensing, health, fire and police departments, told Rodriguez they were there to conduct an inspection. Expressing concern that a late-night inspection would create an increased personal safety risk for him and his brothers, Rodriguez asked the inspectors to return the next morning when the store opened for business. However, the inspectors insisted upon conducting the inspection that night. When the inspection was completed approximately an hour-and-a-half later, one of the inspectors issued Rodriguez a summons for operating without a license. As the inspectors were getting ready to leave, Rodriguez asked them to wait while he and his brothers re-closed the store, so they could all leave together under the protection of the armed members of the inspection team. However, the inspectors refused to delay their departure and left the store.
Approximately five minutes later, as they were re-closing the store, the brothers heard the sound of the alarm in Rodriguez's car. When Julio went outside to investigate, he observed "side-swipe" damage to the car and a man who Julio could not understand, due to his limited comprehension of English, apparently trying to tell him something about the damage. Julio went back into the store to get his brother. When Julio and Rodriguez left the store to look at the damage to the car and speak to the man, they were both shot. As Julio was running back into the store, he saw Rodriguez heading in the direction of the shooter. Julio survived the shooting, but the police discovered Rodriguez's lifeless body a block from the store around 11:45 p.m. According to Julio, the shooting occurred approximately ten minutes after the inspection team left the store. The person who shot Rodriguez and Julio was never apprehended.
*492 Plaintiffs Betzaida Gonzales and Ramona Checo, as co-administrators of Rodriguez's estate and guardians ad litem for his minor children, and Julio Jacques, brought this action against the City of Camden and the alleged individual members of the inspection team. Plaintiffs' complaint asserted claims under the Civil Rights Act, 42 U.S.C.A. § 1983, as well as under State law.
After expiration of the time for discovery, defendants moved for summary judgment. In opposition to the motion, plaintiffs relied upon affidavits by Julio and Ricardo Jacques recounting what occurred on the evening of the shootings.
The trial court concluded in an oral opinion that defendants could not be held liable under the state-created danger doctrine because plaintiffs' proofs could not support a finding that defendants' actions created an opportunity that otherwise would not have existed for the commission of a crime, that defendants "wilfully disregarded" the brothers' safety by refusing to stay until they re-closed the store, or that Rodriguez's death and Julio's injuries were a "direct result" of defendant's actions. Accordingly, the court granted summary judgment dismissing plaintiffs' complaint.
The Civil Rights Act, 42 U.S.C.A. § 1983, provides in pertinent part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
Section 1983 does not create any substantive rights; it only establishes remedies for deprivations of rights established elsewhere in the United States Constitution or federal statutes. Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433, 442 (1979).
Plaintiffs assert that the inspection team's insistence upon inspecting Rodriguez's grocery store after its normal closing hour, and subsequent refusal to wait until Rodriguez and his brothers re-closed the store to provide them with an armed escort to Rodriguez's car, constituted a violation of their substantive due process rights protected by the Fourteenth Amendment. Plaintiffs claim that this constitutional violation subjects the members of the inspection team and the City of Camden to liability for Rodriguez's death and Julio's personal injuries resulting from the shootings.
In DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195-96, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249, 258-59 (1989), the Court held that a State's failure to protect its citizens from acts of violence by private parties does not violate the Due Process Clause of the Fourteenth Amendment:
[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.... Its purpose was to protect the people from the State, not to ensure that the State protected them from each other.
*493 Consistent with this view of the Due Process Clause, the Court in DeShaney held that social workers employed by a county agency, who had reason to believe a father was physically abusing his young son but failed to take any steps to remove the child from the father's custody, could not be held liable for injuries the child suffered as a result of beatings by the father. In reaching this conclusion, the Court stated:
[T]he harms Joshua suffered occurred not while he was in the State's custody, but while he was in the custody of his natural father, who was in no sense a state actor. While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them.
[489 U.S. at 201, 109 S.Ct. at 1006, 103 L.Ed.2d at 262.]
Since DeShaney, a majority of federal circuit courts of appeal, relying upon the Court's observation that the defendant social workers in DeShaney "played no part in ... creation" of the dangers faced by the young son at the hands of his father, ibid., have concluded that state and local officials may be held liable under section 1983 for death or injury suffered as a result of a "state created danger." See, e.g., Butera v. Dist. of Columbia, 235 F.3d 637, 647-54 (D.C.Cir.2001); Kallstrom v. City of Columbus, 136 F.3d 1055, 1066 (5th Cir.1998); Uhlrig v. Harder, 64 F.3d 567, 572-74 (10th Cir.1995), cert. denied, 516 U.S. 1118, 116 S.Ct. 924, 133 L. Ed.2d 853 (1996); Kneipp v. Tedder, 95 F.3d 1199, 1205-09 (3d Cir.1996); Dwares v. City of New York, 985 F.2d 94, 98-99 (2d Cir. 1993); L.W. v. Grubbs, 974 F.2d 119, 121-22 (9th Cir.1992), cert. denied, 508 U.S. 951, 113 S.Ct. 2442, 124 L.Ed.2d 660 (1993); Freeman v. Ferguson, 911 F.2d 52, 54-55 (8th Cir.1990); see generally, Joseph M. Pellicciotta, "State-Created Danger," or Similar Theory, Basis for Civil Rights Action under 42 U.S.C.A. § 1983, 159 A.L.R. Fed. 37, 50-55 (2000); David Pruessner, The Forgotten Foundation of State-Created Danger Claims, 20 Rev. Litig. 357, 365-74 (2001).
Because the Supreme Court has not yet recognized a cause of action for a "statecreated danger," there is no consensus among the federal circuits concerning its precise elements. See generally, Jeremy Daniel Kernodle, Note, Policing the Police: Clarifying the Test for Holding the Government Liable under 42 U.S.C. § 1983 and the State-Created Danger Theory, 54 Vand. L.Rev. 165, 166-87 (2001). Plaintiffs rely upon the Third Circuit's formulation of this doctrine in Kneipp, which requires a party asserting a state-created danger claim to establish four elements:
(1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur.
[95 F.3d at 1208 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1152 (3d Cir.)), cert. denied, 516 U.S. 858, 116 S.Ct. 165, 133 L. Ed.2d 107 (1995).]
This court is not required to follow the decisions of the Third Circuit or any other lower federal court on a question of federal law. Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 78-80, 577 A.2d 1239 (1990). However, we are satisfied that the state-created danger doctrine constitutes a proper interpretation of the Due Process Clause, and we accept the Third Circuit's analytical framework for application of the doctrine.
*494 The kind of factual circumstances that may provide a foundation for a claim under the state-created danger doctrine are illustrated by Kneipp and Wood v. Ostrander, 879 F.2d 583 (9th Cir.1989).
In Kneipp, the plaintiff and her husband were stopped by police officers for causing a disturbance while walking home from a bar. The plaintiff, who was considerably more intoxicated than her husband, was apparently the primary cause of the disturbance. Her husband told the officers that the couple had a babysitter watching their child, and asked for permission to return home so the babysitter could go home. The police officers agreed, but continued to detain plaintiff. According to plaintiff's husband, he assumed when he left the scene that, because plaintiff was highly intoxicated, the police would bring her to the police station or a hospital. However, shortly after he left, the police released plaintiff to walk home by herself. An hour-and-a-half later, she was found at the bottom of an embankment close to her apartment suffering from hypothermia, which resulted in permanent brain damage.
The Third Circuit concluded that these factual allegations stated a prima facie case against the police officers for violating the plaintiff's liberty interest in personal security protected by the Due Process Clause. In reaching this conclusion, the court stated:
The conduct of the police, in allowing [plaintiff's husband] to go home alone and in detaining [plaintiff], and then sending her home unescorted in a seriously intoxicated state in cold weather, made [plaintiff] more vulnerable to harm.... As a result of the affirmative acts of the police officers, the danger or risk of injury to [plaintiff] was greatly increased.
....
... That they failed to take the appropriate measures, knowing that [plaintiff] was severely intoxicated, shows that the police officers acted with reckless disregard for her safety.
[Id. at 1209-10.]
In Wood, the plaintiff was a passenger in a car being operated by a person arrested for driving while under the influence at 2:30 a.m. The arresting officer directed the plaintiff to get out of the car, which he impounded. The officer then placed the driver in the patrol car and drove away. According to the plaintiff, there were no open businesses in the area where the police officer left her, which had the highest violent crime rate in the county outside the City of Tacoma. The temperature was fifty degrees and plaintiff was wearing only a blouse and jeans. After starting to walk in the direction of her home, which was five miles away, the plaintiff accepted a ride from an unknown man, who drove to a secluded area and raped her.
In concluding that plaintiff had stated a viable claim of a substantive due process violation by the police officer who left her stranded on a highway in a high-crime area, the Ninth Circuit stated:
[Plaintiff] has raised a triable issue of fact as to whether [defendant's] conduct "affirmatively placed the plaintiff in a position of danger." ... The fact that [defendant] arrested [the driver], impounded his car, and apparently stranded [plaintiff] in a high-crime area at 2:30 a.m. distinguishes [plaintiff] from the general public and triggers a duty of the police to afford her some measure of peace and safety....
... Moreover, the inherent danger facing a woman left alone at night in an unsafe area is a matter of common sense.
[879 F.2d at 589-90.]
*495 This case does not involve the same kind of aggravated official wrongdoing that was found to support the claimed violations of substantive due process rights in Kneipp and Wood. Even viewing the evidence in a light most favorable to plaintiffs, as required on a motion for summary judgment by defendants, Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540, 666 A.2d 146 (1995), plaintiffs could not establish two elements of a claim under the state-created danger doctrinethat the members of the inspection team "used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur" and that they "acted in wilful disregard for the safety of the plaintiff[s]."[1]Kneipp, supra, 95 F.3d at 1208.
The underlying dangerous circumstance that created the opportunity for the shootings of Rodriguez and Julio Jacques was their employment in a store located in a high-crime neighborhood. On a normal day, they did not close the store until sometime between 9:00 and 9:30 p.m., when it is dark outside most of the year. At that time, Rodriguez and Julio would have to walk to Rodriguez's car parked outside or to their homes located a few blocks away. Thus, the only difference between the dangers posed by this daily routine and the situation on the day of the shootings is that Rodriguez had to close the store approximately an hour-and-a-half later than normal. Although we assume there is some incremental increase in the dangers encountered by pedestrians in a high-crime neighborhood between 9:30 and 11:00 p.m., plaintiffs did not present any evidence from which a finding could be made concerning the magnitude of that increased danger. In fact, the only evidence plaintiffs presented of a higher violent crime rate late at night related to the hours after midnight. Furthermore, the three brothers could have walked the short distance to Rodriguez's car or their homes together. Thus, the inspection team's refusal to remain until the brothers re-closed the store to provide them with an armed escort to Rodriguez's car did not create a situation of isolation and vulnerability comparable to the female passenger in Wood, who was placed in a position where she had to walk five miles by herself in a highcrime area to reach her home. Therefore, plaintiffs' proofs could not support a finding that the members of the inspection team "used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur." Kneipp, supra, 95 F.3d at 1208.
For similar reasons, we conclude that a trier of fact could not find that defendants "acted in wilful disregard for the safety of the plaintiffs." Ibid. In our view, the failure of the officials who conducted the inspection to accede to the brothers' request to remain a short while *496 longer and escort them to their car could be found to constitute negligence. However, "the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." County of Sacramento v. Lewis, 523 U.S. 833, 849, 118 S.Ct. 1708, 1718, 140 L.Ed.2d 1043, 1059 (1998). The only form of official conduct that can be found to violate the Due Process Clause is conduct that is so "egregious[ly]" wrongful that it "shocks the conscience." Id. at 846, 118 S.Ct. at 1716-17, 140 L.Ed.2d at 1057. Even a showing of "deliberate indifference" to public safety may be insufficient in some circumstances to satisfy this high threshold for liability under the Due Process Clause. Id. at 849-54, 118 S.Ct. at 1718-21, 140 L.Ed.2d at 1059-62. Therefore, the inspection team's refusal to remain in the grocery store for the additional time required to escort Rodriguez and his brothers to their car did not create such a substantial risk of harm to them that it could support a finding of a "wilful disregard" for their safety.
Plaintiffs also argue, without any citation to authority, that if we reject their federal constitutional claim, we should recognize a cause of action for a "state-created danger" under the New Jersey Constitution.[2] We perceive no reason for the recognition of a state constitutional tort that would impose liability for state-created dangers under a broader range of circumstances than have been recognized by the federal courts. Although a state court is free to require greater protections under its own constitution than are mandated by the United States Constitution, see Robinson v. Cahill, 62 N.J. 473, 490-91, 303 A.2d 273 (1973), the standards established in Kneipp for determining whether official conduct violates the Due Process Clause sufficiently protect personal security interests.
Affirmed.
NOTES
[1] Because we conclude that plaintiffs' proofs could not be found to satisfy these two elements of a cause of action under the statecreated danger doctrine, we have no occasion to consider whether plaintiffs' proofs could satisfy the other two elementsthat is, a "foreseeable and fairly direct" causal connection between the wrongful official conduct and "the harm ultimately caused," and "some relationship between the state and plaintiff." Ibid. Because plaintiffs' proofs could not be found to establish a constitutional violation, we also have no occasion to consider whether the individual defendants would be entitled to qualified immunity. See Siegert v. Gilley, 500 U.S. 226, 231-33, 111 S.Ct. 1789, 1793-94, 114 L.Ed.2d 277, 286-87 (1991). In addition, we note that to establish a claim against the City, plaintiffs would have to prove that the actions of the members of the inspection team constituted official policy or custom or that the City acted with deliberate indifference to its inhabitants' rights in training them. See Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403-09, 117 S.Ct. 1382, 1388-91, 137 L.Ed.2d 626, 638-43 (1997).
[2] Plaintiffs did not pursue the claims under the Tort Claims Act, N.J.S.A. 59:1-1 to 12-3, asserted in their complaint either in opposition to defendants' motion for summary judgment or in their brief filed with this court.