Justice LaVECCHIA,
dissenting.
Plaintiff, Lorraine Gormley, a Public Defender lawyer for involuntarily committed psychiatric patients, was attacked by a client, B.R., in a community “day room” in Ancora Psychiatric Hospital while meeting the newly committed woman for the first time. The unprovoked attack caused plaintiff serious injuries. Although plaintiff sought relief on a number of theories, in this appeal we consider her claim against State Department of Human Services officials and Ancora’s past and present administrators based on the theory that those defendants violated her substantive due process right to be free from state-created danger. Through that alleged due process violation, plaintiff seeks civil damages under *117 42 U.S.C.A § 1983 (Section 1983). Although prior to argument before this Court plaintiff focused on her Section 1983 claim, she invokes the same reasoning to support her parallel claim for civil damages under the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-1 to -2. Plaintiff also seeks injunctive relief under both statutes.
As the majority acknowledges, neither Section 1983 nor the CRA confers affirmative rights upon plaintiff. Therefore, plaintiff must establish a colorable substantive due process constitutional deprivation. I cannot agree with the majority’s conclusion that a substantive due process state-created-danger claim has been presented in this matter. Moreover, even if I were to agree with the majority that a debatable claim has been set forth, I cannot conclude that such a claim was clearly established at the time plaintiff suffered her injuries. Thus, I would affirm the Appellate Division’s judgment that found applicable the doctrine of qualified immunity, which shields the individual defendants from personal civil damages. I agree with the majority that claims for injunctive relief are not barred by the doctrine of qualified immunity. Nonetheless, for the reasons that follow, I respectfully dissent from the judgment of the Court.
I.
It is important at the outset to recognize that plaintiff was injured by a private actor, not a state actor. Generally, a state does not violate the Due Process Clause of the Fourteenth Amendment if it fails to protect its citizen from private violence. DeShaney v. Winnebago Cnty. Dep’t of Soc. Servs., 489 U.S. 189, 195-96, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249, 258-59 (1989). In DeShaney, a case that involved violence by a private actor,[1] the *118 United States Supreme Court stated that “the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.” Id. at 196, 109 S.Ct. at 1003, 103 L.Ed.2d at 259. Having no obligation to provide such services, a state cannot be held liable for injuries that would have been avoided if such protection had been afforded. Id. at 196-97, 109 S.Ct. at 1003-04, 103 L.Ed.2d at 259. However, an exception for persons in a “special relationship” with the state was noted.
The Supreme Court allowed for the viability of a Section 1983 claim based on a violation of substantive due process when a special relationship arises that imposes on the state affirmative duties of care and protection, such as when the state takes a person into custody against his will. By way of example, the Supreme Court discussed a duty to provide medical services to involuntarily committed mental patients, to provide medical services to people injured in the process of being arrested, and perhaps to avoid moving a child in state custody into an abusive foster home. Id. at 199-201 & n. 9, 109 S.Ct. at 1005-06 & n. 9, 103 L.Ed.2d at 261-63 & n. 9. That “special relationship” exception has spawned numerous cases in which plaintiffs have sought to impose Section 1983 liability on the basis of alleged violations of substantive due process. See, e.g., Henry A. v. Willden, 678 F.3d 991, 998-1001 (9th Cir.2012); Nicini v. Morra, 212 F.3d 798, 808 (3d Cir.2000) (en banc); Ying Jing Gan v. City of New York, 996 F.2d 522, 534 (2d Cir.1993). It provides the basis for one of plaintiffs claims in this case.
A comment by the Supreme Court provides the genesis for a second theory of Section 1983 liability on the basis of an alleged substantive due process violation. This “state-created danger” exception arises from the DeShaney Court’s statement that *119 “[wjhile the State may have been aware of the dangers that [the plaintiff] faced in the free world, it played no part in their creation, nor did it do anything to render [the plaintiff] more vulnerable to them.” 489 U.S. at 201, 109 S.Ct. at 1006, 103 L.Ed.2d at 262. That observation has been the basis on which a state-created-danger theory of liability has been accepted by several Circuit Courts of Appeals. See, e.g., Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir.2006), cert. denied, 549 U.S. 1264, 127 S.Ct. 1483, 167 L.Ed.2d 228 (2007); Kneipp v. Tedder, 95 F.3d 1199, 1205 (3d Cir.1996); Reed v. Gardner, 986 F.2d 1122, 1125 (7th Cir.), cert. denied, 510 U.S. 947, 114 S.Ct. 389, 126 L.Ed.2d 337 (1993); Dwares v. City of New York, 985 F.2d 94, 98-99 (2d Cir.1993); Freeman v. Ferguson, 911 F.2d 52, 55 (8th Cir.1990). Although the state-created-danger theory has not been adopted affirmatively by the United States Supreme Court, that Court’s comment in DeShaney has been regarded as suggesting, by inference, the possibility of such cause of action, as the majority notes. See ante at 101 n. 9, 93 A.3d at 360 n. 9.
The Court of Appeals for the Third Circuit endorsed a state-created danger cause of action in Kneipp, and refined the elements for such an action in Bright. As established in Bright, supra, a state-created-danger cause of action arises when:
(1) the harm ultimately caused was foreseeable and fairly direct;
(2) a state actor acted with a degree of culpability that shocks the conscience;
(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant’s acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state’s actions, as opposed to a member of the public in general; and
(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.
[443 F.3d at 281 (internal quotation marks and footnotes omitted).]
Like my colleagues in the majority, I accept that a Section 1983 claim may be advanced based on an alleged violation of substantive due process on state-created-danger and special relationship theories of liability, notwithstanding that the United States Su *120 preme Court has yet to uphold the state-ereated-danger theory in any setting. Indeed, decisions of our Appellate Division already have signaled a willingness to employ the state-created-danger theory when and if an appropriate set of circumstances is presented, although no Appellate Division panel so far has found such a set of facts to exist. See Estate of Strumph v. Ventura, 369 N.J.Super. 516, 525-26, 849 A.2d 1095 (App.Div.), certif. denied, 181 N.J. 546, 859 A.2d 691 (2004); Gonzales v. City of Camden, 357 N.J.Super. 339, 347, 815 A.2d 489 (App.Div.2003). I would be prepared to do the same for state-created danger, provided that the governing analysis conforms to the Bright test.
The Bright formulation employed by the Court of Appeals for the Third Circuit has much to commend it. It requires an affirmative act or acts by the state that created the danger or rendered the plaintiff more vulnerable. Bright, supra, 443 F.3d at 282-84. It is consonant with the Supreme Court’s decision in DeShaney to find that the Constitution forbids state actors from affirmatively acting with willful disregard for a specific risk to an individual’s safety in a way that creates a foreseeable, direct risk of harm to the plaintiff. Importantly, it requires that overall the government’s action or inaction must shock the conscience. Id. at 281 (citing Cnty. of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). The fact that state defendants simply “stood by,” or that they could have “done more” in a particular set of circumstances, is insufficient without more to meet Bright’s “shocks the conscience” requirement for culpability. The Bright standard calls for affirmative acts. Id. at 282-84. Acts of omission must be particularly scrutinized for egregiousness, which must include a showing of deliberate indifference and disregard for constitutional rights. See Henderson v. Gunther, 931 P.2d 1150, 1161 (Colo.1997).
II.
In this appeal, plaintiff argues two theories of liability under Section 1983: special relationship and state-created danger.
*121 Despite plaintiffs recognition that those theories of liability involve different standards, the majority melds the two theories into a single — and novel — cause of action. See ante at 110 n. 11, 93 A.3d at 365-66 n. 11. I cannot adopt that analytical framework. The two theories are distinct and should be considered separately.
A.
In respect of special relationship, I disagree that, as a visitor to Ancora, a state psychiatric hospital, plaintiff held a status equivalent to that of the institutionalized persons residing in that hospital. Persons committed to hospitalization are committed to the State’s care. Although plaintiff is a lawyer whose professional obligation necessitated a consultative visit with her client, she shares the status of any family member, friend, or privately retained attorney or medical professional who enters the facility to visit a committed patient. As such, she is far from the equivalent of a patient committed to the custody of the psychiatric institution against her will. See DeShaney, supra, 489 U.S. at 199, 109 S.Ct. at 1005, 103 L.Ed.2d at 261. No case cited by any party or the majority — from any court — supports the notion that plaintiff is somehow equivalent to a committed patient to whom the State owes a special relationship.
Special relationship cases hinge on custody or a similar deprivation of liberty. See, e.g., Henderson, supra, 931 P.2d at 1157-58 (citing cases refusing to extend special relationship to circumstances beyond incapacitation or institutionalization). Even if plaintiffs presence in a state psychiatric hospital effected a minimal restraint of liberty, I would not find it sufficient to create a special relationship. As the Third Circuit has emphasized, DeShaney uses a test for “physical custody” when determining whether a plaintiff has a special relationship with the state. See Ye v. United States, 484 F.3d 634, 635, 639 (3d Cir.2007), cert. denied, 552 U.S. 1099, 128 S.Ct. 905, 169 L.Ed.2d 729 (2008). The closest plaintiff can come to citing an analogous case is the district court decision in Glaspy v. Malicoat, 134 F.Supp.2d 890 (W.D.Mich.2001), but *122 that case is inapposite. In Glaspy, a prison visitor case, prison officials took direct, affirmative acts toward the plaintiff (a visiting father), refusing his repeated requests to access a restroom to urinate. Id. at 892-93. As a result, the plaintiff suffered pain while waiting to use the restroom, and ultimately suffered the humiliation of urinating in his pants. Ibid.
That district court case is distinguishable from this case because no direct affirmative act was taken toward plaintiff by state officials. The fact that Ancora’s general visitation policy provided for plaintiff and certain other visitors to meet with patients anywhere on the ward generally, or in the community day room where patients congregated, does not, in my view, meet the level of control over plaintiffs personal behavior generally that gives rise to a special relationship. State actors exerted no direct control over plaintiffs movement, seating, or actions within the day room in which this attack took place. Nothing in this case comes close to resembling the direct assertion of control over the prison visitor that was central to the court’s decision in Glaspy. See id. at 895. In sum, because plaintiff was never under custodial control in any sense that fits the DeShaney Court’s test for physical custody, I find it impossible to conclude that, on these facts, plaintiff presents a ease of special relationship liability.
B.
The analysis for state-created danger requires a different examination, specifically one that entails use of the four Bright factors:
(1) the harm ultimately caused was foreseeable and fairly direct;
(2) a state actor acted with a degree of culpability that shocks the conscience;
(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant’s acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state’s actions, as opposed to a member of the public in general; and
(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.
[Bright, supra, 443 F.3d at 281 (internal quotation marks omitted).]
*123 In Ye, supra, the Third Circuit explained that the fourth factor can be broken down further, as follows:
(1) a state actor exercised his or her authority,
(2) the state actor took an affirmative action, and
(3) this act created a danger to the citizen or rendered the citizen more vulnerable to danger than if the state had not acted at all.
[484 F.3d at 638-39.]
That is the test that I would apply to plaintiffs claim. It is a rigorous test and, for me, it is far from clear that plaintiff has advanced a cause of action that is even debatable.
That plaintiff was subjected to serious injuries in the course of performing her professional obligation is deplorable. But the sympathy to which she is entitled does not help fashion a constitutional rule of law in this matter that promotes desirable public policy and predictability in application. Indeed, I believe that, by letting plaintiffs claim go to the jury, the majority effectively embraces extensive Section 1983 state liability on the basis of state-created danger to persons visiting inpatients in state psychiatric hospitals.[2] The parameters of the liability created by the majority’s holding are unclear. Nevertheless, that holding will impact numerous state, county, and municipal operational settings, such as schools, facilities for the developmentally disabled, and prisons, where persons are in the care and custody of governmental actors for all or substantial portions of most days.
*124 Respectfully, I disagree with the majority as to whether any of the state officials’ actions in this case were affirmative acts sufficient to “shock the conscience” under the Bright test. The majority gives great weight to the State’s failure to specifically inform plaintiff about B.R.’s watch status.[3] However, the failure to inform plaintiff of the supervised watch status on which her client was placed is vastly different from the broken affirmative promises to the nurse in L.W. v. Grubbs, 974 F.2d 119 (9th Cir.1992), cert. denied, 508 U.S. 951, 113 S.Ct. 2442, 124 L.Ed.2d 660 (1993),[4] or the affirmative denial of the father’s requests in Glaspy. Rather, B.R. was permitted to be among people in the day room and the State owed all the other patients in that room protection due to their special relationship to the State — because they were committed to a psychiatric hospital. Nevertheless, B.R. and other patients were permitted to mingle, in the day room community, with themselves and in the company of others. That is where plaintiff met with her new client. It is far from clear that the watch status for B.R. was unusual or that other patients in the room did not have a similar status. I cannot conclude that the state officials’ failure to warn plaintiff of that status rises to a conscience-shocking level of culpability.[5]
*125 Moreover, the majority places great reliance on statistics about past incidents of patient outbursts or assaults that occurred in the day room in the years preceding this incident. Overreliance on those statistics, in my view, skews this Court’s analysis and requires comment. The fact that there had been numerous attacks in the day room in years preceding this incident does not predict that any particular patient would act out or attack another person in the room. There is no direct correlation between the past violence and the actual act of violence by B.R. toward plaintiff. A history of patient violence might affect staffing levels — a resource-driven determination that is rightfully assessed under state tort law — but it should not give rise to a constitutional violation on the facts of this case.
Foreseeability, a necessary element under the Bright test, is not advanced by this statistical history of incidents involving past patients and conditions that may not bear any resemblance to conditions in the day room on the day in which plaintiff suffered her injuries. Bright’s test requires that the danger must have been foreseeable and fairly direct. For me, information about other patients’ behavior in the past does not make the harm visited on plaintiff foreseeable and fairly direct.
In sum, in my view plaintiff does not present a set of facts that debatably rise to a substantive due process violation. The Bright standard of conduct that shocks the conscience is not satisfied and therefore this claim should not advance past summary judgment.
III.
Even if I were to agree with the majority’s indulgent view of these facts, I would nonetheless conclude that plaintiffs case should only be allowed to go to the jury in limited fashion. I would not allow her novel claim for civil damages against the state *126 governmental actors to proceed. In my view, there was no clearly established right to proceed on the basis of state-created danger on facts such as these that would have alerted government officials that they were violating any clearly established constitutional right.
The doctrine of qualified immunity shields government officials from personal liability under Section 1983 “insofar as their [discretionary] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982). Unless a government officer violates a right so clearly established that a reasonable official would have understood that his or her actions violated that right, governmental actors are free to perform their duties without being hobbled by the constant threat of individual liability under Section 1983. Anderson v. Creighton, 483 U.S. 635, 640-41, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, 531 (1987). The standard is intentionally set high before personal liability will attach. In my view, the doctrine of qualified immunity applies in this instance because prior cases do not clearly establish that a claim on the basis of state-created danger would apply under facts such as these.
Respectfully, I believe the majority overstates any similarity between this case and L.W., supra, in which a nurse, who was sexually assaulted by the prison inmate with whom she was assigned to work, had been affirmatively and falsely told that she would be under the protective supervision of guards throughout her assigned task. 974 F.2d at 120. Unlike in L.W., no affirmative promises or false statements were given to plaintiff in this ease. Similarly, the state officials in Glaspy, supra, exercised a degree of direct control over the father’s actions that goes well beyond identifying places for visitors to meet with patients, as defendants did in this case. 134 F.Supp.2d at 892-93. Neither the majority nor the parties cite any other cases that more persuasively establish the applicability of a state-created-danger cause of action in circumstances similar to those of this case. *127 Indeed, in a persuasive decision on similar facts, the Supreme Court of Colorado refused to find a triable claim of state-created danger based on an inmate’s attack on a prison employee. See Henderson, supra, 931 P.2d at 1160-62 (rejecting claim based on failure to provide safe working environment).
In sum, if a cause of action were cognizable on these facts, I would find that the doctrine of qualified immunity applies in this instance. The doctrine should shield the defendant governmental officials from this action seeking to impose personal liability on them in their capacity as State Department of Human Services officials or administrators of Ancora Psychiatric Hospital. I do not believe that a state-created-danger theory for a cause of action like the one that plaintiff advances in this matter was clearly established under law when the events underlying this action took place. Certainly, in my view, no case had been decided that found an actionable state-created-danger claim that resembled this one.
Moreover, I am concerned that this new theory of constitutional violation for state-created danger will supplant the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 12-3, and its careful delineation of public entity and individual liability. Under the Tort Claims Act, willful and wanton action will render a governmental employee bereft of state indemnification and therefore personally responsible for civil damages. See N.J.S.A. 59:10-1 (providing for indemnification of public employee when defended by Attorney General); N.J.S.A. 59:10A-2 (allowing Attorney General to refuse to defend public employee for act or omission not in scope of employment or fraud, willful misconduct, or actual malice). The majority’s analysis, as applied in this ease, suggests that a lesser showing will permit recovery against individual governmental officials under this new constitutional violation.
Thus, I would apply the doctrine of qualified immunity to bar plaintiffs money damages claims. As the majority notes, plaintiff also sought injunctive relief. Because qualified immunity does not act as a bar to equitable relief, Hill v. Borough of Kutztown, 455 F.3d 225, 244 (3d Cir.2006), plaintiffs claim for injunctive relief *128 would not be barred by qualified immunity. To that extent I do not disagree with the majority.
For the foregoing reasons, I respectfully dissent from the judgment of the Court.
For affirmance in part; reversal in part and remandment— Chief Justice RABNER, Justice ALBIN, and Judge RODRÍGUEZ (temporarily assigned) — 3.
For dissent — Justices LaVECCHIA and PATTERSON — 2.
Not Participating — Judge CUFF (temporarily assigned) — 1.

 In DeShaney, supra, a young boy was severely beaten by his father, resulting in permanent and substantial brain damage. 489 U.S. at 192-93, 109 S.Ct. at 1001-02, 103 L.Ed.2d at 256-57. Prior to the incident that caused the brain damage, the county department of social services had failed to remove the boy *118 from his father's custody for two years, despite the boy's repeated hospitalizations and department case workers' recorded suspicions of child abuse. Ibid.

 The majority also fashions on these facts a new CRA claim based on state-created danger. Circuit Courts reflect no consensus on the precise elements of a federal state-created-danger claim because the United States Supreme Court has not yet recognized the action. See generally Jeremy Daniel Kernodle, Note, Policing the Police: Clarifying the Test for Holding the Government Liable under 42 U.S.C. § 1983 and the State-Created Danger Theory, 54 Vand. L.Rev. 165 (2001). However, our Court has locked onto this case as a basis for establishing this new state-created-danger claim that will have the capacity to greatly expand tort-like liability for governmental actors. See Lewis, supra, 523 U.S. at 848, 118 S.Ct. at 1718, 140 L.Ed.2d at 1059 ("[T]he Fourteenth Amendment is not a ‘font of tort law to be superimposed upon whatever systems may already be administered by the States ....'” (quoting Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405, 413 (1976))).

 B.R. was on "close visual observation" status, meaning an Ancora employee was required to maintain visual observation of her; there is no proximity requirement with this status. Aides were present in the day room when the attack took place.

 It bears noting that, on remand, the jury in L.W. determined that the defendant had acted with gross negligence, but not recklessness or deliberate indifference. L.W. v. Grubbs, 92 F.3d 894, 895 (9th Cir.1996). Without a finding of deliberate indifference, the Court of Appeals for the Ninth Circuit threw out the jury verdict in plaintiff's favor. Id. at 900.

 Indeed, the majority’s analysis fails to provide the slightest guidance on whether giving notice of such watch status would have been enough to avoid a substantive due process claim. Instead, my colleagues cite to a totality-of-the-circumstances approach that will leave government officials constantly uncertain as to whether they are at risk of personal liability. That is not the basis for sound governmental operation. Indeed, the Supreme Court has noted its reluctance to expand substantive-due-process liability "because guideposts for *125 responsible decisionmaking in this unchartered area are scarce and open-ended.” Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261, 273 (1992).